IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ERIC RAGLAND, II, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>F & M KOZ, INC, MARY KOZLOWSKI, )<br>and FRANK KOZLOWSKI, )<br>)<br>Defendants. ) | No. 2:21-cv-02530-TLP-cgc |

**ORDER MODIFYING AND ADOPTING IN PART REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS' MOTION TO DISMISS**

Defendants F & M Koz, Inc, Mary Kozlowski, and Frank Kozlowski (collectively "Defendants") move to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8.) Under Administrative Order 2013–05, the Court referred this case to Magistrate Judge Charmiane G. Claxton ("Judge Claxton") for management of all pretrial matters. (ECF No. 13.) Judge Claxton issued a Report and Recommendation ("R&R") recommending that the Court grant in part and deny in part Defendants' motion to dismiss. (ECF No. 18.)

Defendants object to the R&R's analysis of Plaintiff's Title VII claim for race discrimination based on constructive discharge. (ECF No. 19 at PageID 631.) Plaintiff responded to Defendants' objections but made no objections of his own. (ECF No. 20.) Because Defendants' objection has merit, the Court **MODIFIES** and **ADOPTS IN PART** and **REJECTS IN PART** the R&R. And the Court therefore **GRANTS** Defendants' motion to dismiss.

## THE REPORT AND RECOMMENDATION

**I.   Facts of the Case**

Plaintiff Eric Ragland II sued Defendants pro se in Shelby County Circuit Court in March 2021, alleging defamation, negligence, and harassment under Tennessee law. (ECF Nos. 1-4 at PageID 26; 9 at PageID 309.) Plaintiff amended his complaint in July 2021 to add claims for discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e. (ECF Nos. 1-6 at PageID 193; 9 at PageID 472.) Plaintiff filed a notice of removal in August 2021. (ECF No. 1.) But because only defendants may remove cases from state court,[1] Defendants filed their own notice of removal, along with the state court record, a week later. (ECF Nos. 7 & 9.)

In the amended complaint, Plaintiff alleges that he is an "Afro-American male" with skin that is "dark in color" and "black in tone." (ECF No. 9 at PageID 474.) According to the amended complaint, Defendant F & M Koz, Inc does business as Jet's Pizza, and an individual named Mike Theobald manages a Jet's Pizza location. (*Id.*) Plaintiff alleges that Theobald called Plaintiff a "crackhead" in front of "all active management, staff and patrons of Jet's Pizza." (*Id.*) Plaintiff also asserts that Theobald then used Plaintiff's "physical characteristics such as [his] race, Color, sex and stature" to compare Plaintiff and a fictional character, Tyrone Biggums, a character depicted as a drug addict on "The Chappelle Show." (*Id.*)

---

[1] Only a defendant may remove a state court lawsuit to federal court. *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."); *see also* 28 U.S.C. § 1446(a) ("A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal . . . .").

The complaint alleges that Theobald asked Plaintiff if he was on drugs and stated that Plaintiff was "like Tyrone Biggums, scratching." (*Id* at PageID 474–75.) Plaintiff asserts that patrons and staff "burst into strong laughter" and began calling him the "crackhead of Jets." (*Id.* at PageID 475.) Plaintiff alleges that this "caus[ed] massive damages to [his] name, image and [his] reputation." (*Id.*) Plaintiff also claims that he was "subjected to loss of income" and that he "sustained massive financial damages," as well as "massive emotional stress and massive mental anguish." (*Id.* at PageID 476.)

Plaintiff asserts that by calling him a crackhead and comparing him to the character from The Chappelle Show, Jet's Pizza implied that Plaintiff is a crackhead, that he is uneducated, that he has poor hygiene, and that he "would do anything for money to support the alleged drug addiction," including steal. (*Id.* at PageID 476–77.) Plaintiff also alleges that Theobald tried to reach Plaintiff through phone calls and text messages, "begging for [Plaintiff] to return to the workplace." (*Id.* at PageID 478.) Plaintiff does not allege any details about his employment status or any change resulting from the events underlying the complaint. Plaintiff does however attach his EEOC charge to the amended complaint which states that Plaintiff resigned his employment the date of the manager's comments "due to the continued harassment."[2] (*Id.* at

---

[2] The R&R notes that "Defendants state that Plaintiff's EEOC Charge alleges that he resigned his employment on the date of Theobald's comments." (ECF No. 18 at PageID 620 n.2 (citing ECF No. 1-6 at PageID 214).) And Judge Claxton observed that Plaintiff's response "states the same." (*Id.* (citing ECF No. 10).) But the R&R states that "as these are not pleadings, they are not proper for the court to consider in the context of a Rule 12(b)(6) motion." (*Id.*) But courts reviewing a complaint under Rule 12(b)(6) may consider "exhibits attached to the complaint." *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *see also Golf Vill. North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (same); *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310–11 (6th Cir. 2021) (same). And as stated above, Plaintiff attached his EEOC charge to the amended complaint. (ECF No. 9 at PageID 493.) The Court therefore **MODIFIES** the R&R's factual findings to include that Plaintiff resigned his employment on February 15, 2020, as alleged in Plaintiff's EEOC charge.

3

PageID 493.)

## II. The Magistrate Judge's Analysis

### A. Title VII Claims

After outlining the proper legal standard for motions to dismiss under Rule 12(b)(6), Judge Claxton explained that Title VII prohibits employment discrimination based on "race, color, religion, sex, or national origin." (ECF No. 18 at PageID 623 (quoting 42 U.S.C. § 2000e-2(a)).) And Judge Claxton pointed out that Plaintiff alleges discrimination based on race and color.[3]

#### i. Hostile Work Environment

As the R&R explains, Defendants construed the amended complaint as asserting a hostile work environment claim under Title VII. (*Id.*) The R&R states that "[t]he 'necessary predicate' for such a claim is pleading that a hostile work environment existed." (*Id.* at PageID 623–24 (quoting *Cooper v. Jackson-Madison County General Hosp. Dist.*, 742 F. Supp. 2d 941, 956–57 (W.D. Tenn. 2010)).) And "[a] hostile work environment is one that is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (*Id.* at PageID 624 (quoting *Kelly v. Senior Centers, Inc.*, 169 F. App'x 423, 428 (6th Cir. 2006)).) To establish a prima facie claim of a hostile work environment, a plaintiff must show that (1) "he is a member of a protected class"; (2) "he was subjected to unwelcome racial harassment"; (3) "the harassment was based on race"; (4) "the harassment had the effect of unreasonably interfering with his work environment by creating an intimidating, hostile, or offensive work environment";

---

[3] While Plaintiff alleges that Theobald compared Plaintiff to a fictional drug addict based on his race, color, stature, and sex, Plaintiff does not allege sex-based discrimination, and stature is not a protected category under Title VII. (ECF No. 18 at PageID 623 n.3.)

and (5) "the existence of employer liability." (*Id.* (citing *Newman v. Federal Exp. Corp.*, 266 F.3d 401, 405 (6th Cir. 2001)).)

The R&R explains that in *Kelly*, the Sixth Circuit addressed a hostile work environment claim stemming from allegations that two staff members used a pejorative racial slur, a staff member made derogatory racial comments, and another made racist "jokes" three times. (*Id.* (citing *Kelly*, 169 F. App'x at 429).) While the *Kelly* court condemned this conduct, it found that the plaintiff failed to show a hostile work environment existed because the allegations did not show a "pervasive, aggressive, or constant course of conduct." (*Id.* at PageID 625 (quoting *Kelly*, 169 F. App'x at 429).) The R&R also notes that "[o]ne reported episode of allegedly racially derogatory language is not sufficient to establish that . . . [the] comments were severe and pervasive." (*Id.* (quoting *Cooper*, 742 F. Supp. 2d at 956).) The R&R concludes that Theobald's statements were not "severe enough to create an intimidating, hostile, or offensive work environment." (*Id.* (citing *Carlisle v. Staffing Solutions Southeast, Inc.*, No. 1:16-CV-00334, 2017 WL 2274995, at *2–3 (E.D. Tenn. May 24, 2017)).) And so Judge Claxton recommended dismissal of Plaintiff's hostile work environment claim under Title VII.

### ii.     Disparate Treatment

Judge Claxton concluded, however, that the amended complaint could be construed as asserting a disparate treatment claim. (*Id.*) To state a disparate treatment claim, a plaintiff must allege an "adverse employment action." (*Id.* (citing *Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 522 (6th Cir. 2015)).) The R&R explains that loss of pay is an adverse employment action. (*Id.* (citing *Clay v. United Parcel Srvs., Inc.*, 501 F.3d 695, 710 n.6 (6th Cir. 2007)).) As is constructive discharge. (*Id.* (citing *Logan v. Denny's, Inc.*, 259 F.3d 559, 566–67 (6th Cir. 2001)).) The R&R states that the amended complaint "is not precisely clear as to how

5

Theobald's comments resulted in [Plaintiff's] financial losses." (*Id.*) But the R&R finds that Plaintiff pleaded one of the factors for proving constructive discharge. (*Id.*) And so Judge Claxton recommended denying Defendants' motion to dismiss as it relates to Plaintiff's Title VII claim for disparate treatment.

  **B. § 1981 Claim**

Judge Claxton then turned to Plaintiff's claim under § 1981. (ECF No. 18 at PageID 626.) As the R&R states, under § 1981, "all persons shall have the same right 'to make and enforce contracts, to sue, be parties, give evidence' and enjoy 'the full benefit of all laws and proceedings for the security of persons and property.'" (*Id.* (quoting 42 U.S.C. § 1981).) Judge Claxton observed that "Plaintiff's Complaint does not allege violations of any of these rights." (*Id.*) And so Judge Claxton recommended dismissal of Plaintiff's § 1981 claim.

  **C. Defamation Claim**

Judge Claxton next analyzed Plaintiff's defamation claim stemming from Theobald's alleged statements. (*Id.* at PageID 627.) Judge Claxton emphasized that "[a]n action for slanderous words spoken shall be commenced within six (6) months after the words are uttered." (*Id.* (quoting Tenn. Code Ann. § 28-3-103).) The amended complaint alleges that Theobald's statements occurred on February 15, 2020. (ECF No. 9 at PageID 474.) And as the R&R points out, Plaintiff did not sue Defendants until March 2021. (*Id.* at PageID 309.) The R&R therefore concludes that Plaintiff's defamation claim is time-barred. (ECF No. 18 at PageID 627.) And so Judge Claxton recommended dismissal of that claim too.

  **D. Criminal Harassment Claim**

Lastly, Judge Claxton addressed Plaintiff's harassment claim. (*Id.*) As Judge Claxton observed, the amended complaint alleges that Theobald harassed Plaintiff in violation of

Tennessee Code Annotated § 39-17-308.  (ECF No. 9 at PageID 478–79.)  The R&R states that "[u]nder Tennessee law, the authority to prosecute violations of criminal statutes rests with district attorneys general."  (ECF No. 18 at PageID 627 (citing Tenn. Code Ann. § 8-7-103(a)).)  And so Judge Claxton recommended dismissal of Plaintiff's harassment claim.

# DISPOSITION

## I. Objections

The Court has to review de novo "any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  After this review process, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*  A district court need not articulate all the reasons it rejects a party's objections.  *Tuggle v. Seabold*, 806 F.2d 87, 92 (6th Cir. 1986).

And a party objecting to the R&R must do so specifically enough "to enable the district court to discern those issues that are dispositive and contentious."  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).  "A general objection that does not identify specific issues from the magistrate's report . . . is not permitted because it renders the recommendations of the magistrate useless, duplicates the efforts of the magistrate, and wastes judicial economy."  *Hastings v. Shelby Cnty. Gov't*, No. 2:17-cv-02687-SHL-cgc, 2019 WL 3782198, at *1 (W.D. Tenn. Aug. 12, 2019) (citations omitted); *see also Howard*, 932 F.2d at 509 (finding that a general objection to the entirety of a Magistrate Court's report "has the same effects as would a failure to object").  Also a party cannot "raise at the district court stage new arguments or issues that were not presented to the magistrate [judge]" absent compelling reasons.  *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Defendants object here to the R&R's analysis of Plaintiff's Title VII claim for race discrimination based on constructive discharge. (ECF No. 19 at PageID 631.) This Court will then review that claim de novo. *See* Fed. R. Civ. P. 72(b)(3). Plaintiff responded to Defendants' objection.[4] (ECF No. 20.) Plaintiff lodged no objections to the R&R, and his time to do so has expired. And so the Court reviews the remainder of the R&R's analysis only for clear error. *See* Fed. R. Civ. P. 72(b) advisory committee notes.

## II.   Analysis of Plaintiff's Claims

The Court will now address Defendants' objection and the R&R's analysis of Plaintiff's claims, beginning with the claims under Tennessee law for criminal harassment and defamation.

### A.   Criminal Harassment and Defamation Claims

As explained above, because neither party objected to the R&R on these claims, this Court reviews them for clear error. The R&R correctly analyzes Plaintiff's claims for criminal harassment and defamation. Plaintiff alleges criminal harassment under Tenn. Code Ann. § 39-17-308, but individuals have no private right of action under that statute. *See Reid v. Pressley*, No. 2:19-cv-184-JRG-CRW, 2019 WL 5580216, at *1 n.1 (E.D. Tenn. Oct. 29, 2019) ("Tennessee's harassment statute does not create a private cause of action because it is a criminal statue and, as such, defines crimes and defenses." (citing *Hastings v. Shelby Cnty. Gov't*, No. 17-2687, 2018 WL 7348026, at *6 (W.D. Tenn. Oct. 23, 2018) ("Regarding Plaintiff's claim under Tenn. Code Ann. § 39-17-308, the statute does not create a private cause of action."),

---

[4] Plaintiff argues in his response that Defendants did not timely object within fourteen days of the R&R. (ECF No. 20 at PageID 634–35.) Plaintiff asserts that Defendants filed their objection after 5:00 p.m. on the last day of the objection period. (*Id.*) But under Rule 6(a)(4) of the Federal Rules of Civil Procedure, the "last day" of a filing period ends at midnight for electronic filings. *See* Fed. R. Civ. P. 6(a)(4)(A). And so Defendants timely objected here. *See* LR 6.1 ("Fed. R. Civ. P. 6 shall apply in computing any period of time prescribed or allowed by these Local Rules.").

*report and recommendation adopted as modified*, 2019 WL 313203 (W.D. Tenn. Jan. 24, 2019); *Molthan v. Vanderbilt Univ.*, No. 3:17-CV-00706, 2017 WL 1489099, at *3 (M.D. Tenn. Apr. 26, 2017) (observing that Tenn. Code. Ann. § 39-17-308 is a criminal statute that merely defines crimes and defenses does not create a private cause of action))).

Turning next to the defamation claim, "Tennessee has a six-month statute of limitations for slander actions, running from the time at which the slanderous words are uttered." *Doe v. Andrews*, 275 F. Supp. 3d 880, 891 (M.D. Tenn. 2017) (citing Tenn. Code Ann. § 28-3-103); *see also Am. Addiction Ctrs., Inc. v. Nat'l Ass'n of Addiction Treatment Providers*, 515 F. Supp. 3d 820, 840 n.12 (M.D. Tenn. 2021). The statements forming Plaintiff's defamation claim occurred in February 2020, and Plaintiff did not sue Defendants until March 2021. (ECF No. 9 at PageID 309, 474.) And so Plaintiff's defamation claim is time-barred under Tenn. Code Ann. § 28-3-103. *See Ward v. Knox Cnty. Bd. of Educ.*, 869 F. Supp. 2d 860, 870 (E.D. Tenn. 2012). For these reasons, the Court **ADOPTS** the R&R's analysis of Plaintiff's criminal harassment or defamation claims. The Court therefore **GRANTS** Defendants' motion to dismiss these claims.[5]

### B. Title VII Discrimination Claims

Defendants' motion to dismiss construes the complaint as asserting Title VII claims for race discrimination and constructive discharge. (ECF No. 8-1 at PageID 302.) The R&R construes the complaint as alleging race and color discrimination and asserting claims under

---

[5] The Court also notes that Plaintiff seems to abandon these claims when responding to the motion to dismiss, stating that "there is one issue and only one issue," referring to his allegations about employment discrimination. (ECF No. 10 at PageID 572.) "Claims left to stand undefended against a motion to dismiss are deemed abandoned." *Batson v. Hoover*, 355 F. Supp. 3d 604, 618 (E.D. Mich. 2018) (quoting *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010)). This is another reason to dismiss Plaintiff's criminal harassment and defamation claims.

Title VII for a racially hostile work environment and disparate treatment. (ECF No. 18 at PageID 623–25.)

### i. Hostile Work Environment

The Court agrees with the R&R's analysis of Plaintiff's hostile work environment claim. "A hostile work environment is a workplace 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Kelly*, 169 F. App'x at 428 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). The Sixth Circuit stated in *Kelly* that "conduct that is deplorable, off-color, or offensive to our most basic value of according respect and dignity to every person, is not always legally actionable as a 'hostile environment.'" *Id.* at 429. Rather, courts look at the "totality of circumstances" and consider factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance." *Id.* (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)). "And the conduct must be extreme; 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Id.* (quoting *Hafford*, 183 F.3d at 512–13).

*Kelly* involved conduct far worse and more frequent than Plaintiff's complaint alleges.[6] As the R&R points out, in *Kelly*, two staff members used a pejorative racial slur, a staff member made derogatory racial comments, and another made racist "jokes" three times. *Id.* The Sixth

---

[6] That said, the manager's alleged conduct here is insulting and demeaning. It is unfortunate that Plaintiff endured such comments. But as *Kelly* points out, not every insult rises to the level of a hostile work environment.

10

Circuit found that "[w]hile these incidents are deplorable and offensive, they do not amount to a pervasive, aggressive, or constant course of conduct." *Id.*

Under *Kelly*, the conduct Plaintiff alleges, which all occurred within a single day, does not qualify as "severe and pervasive" enough to establish a hostile work environment under Title VII. And since the Sixth Circuit decided *Kelly*, "courts have found hostile work environment claims lacking 'where the offensive conduct was not a daily or even weekly event.'" *Middleton v. United Church of Christ Bd.*, 483 F. Supp. 3d 489, 502 (N.D. Ohio 2020) (quoting *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 758 (S.D. Ohio Apr. 25, 2018)). For these reasons, the Court **ADOPTS** the R&R's analysis of Plaintiff's hostile work environment claim. And the Court therefore **GRANTS** Defendants' motion to dismiss this claim.

> ii.   **Disparate Treatment and Constructive Discharge**

As stated above, the R&R also construes the complaint as asserting a Title VII claim for racially disparate treatment.[7] (ECF No. 18 at PageID 625.) And the R&R recommends allowing this claim to move forward, concluding that Plaintiff sufficiently alleged "one of the . . . factors

---

[7] The R&R construes the complaint as asserting a Title VII claim for color discrimination. But the R&R has no analysis of any such claim. (ECF No. 18 at PageID 623.) The R&R instead analyzes only Plaintiff's race discrimination claims. (*Id.* at PageID 623–25.) "Race discrimination is distinct from color discrimination." *Flynn v. Memphis Pathology Lab'y (AEL)*, No. 2:19-2882-CV-SHL-TMP, 2020 WL 5801087, at *3 (W.D. Tenn. Sept. 29, 2020) (citing *Cooper v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 742 F. Supp. 2d 941, 950–51 (W.D. Tenn. 2010); *Hood v. City of Memphis Pub. Works Div.*, No. 17-2869, 2018 WL 2387102, at *3–4 (W.D. Tenn. Jan. 8, 2018)). Color discrimination "arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Id.* (quoting *Moore v. Food Lion*, No. 3:06-0712, 2007 WL 596955, at *2 (M.D. Tenn. Feb. 21, 2007)). Although he makes allegations about his skin tone and color, he makes no allegations related to discrimination based on his skin tone. The complaint therefore fails to state a claim for color discrimination. *Cooper*, 742 F. Supp. 2d at 950–51; *Hood*, 2018 WL 2387102, at *4. And so the Court **MODIFIES** the R&R to include this analysis and **DISMISSES** Plaintiff's claim for color discrimination.

11

for proving a constructive discharge." (*Id.* at PageID 626.) Defendants object to this portion of the R&R, arguing that Plaintiff failed to state a claim for constructive discharge. (ECF No. 19 at PageID 631.) As a result, the Court reviews this claim de novo. *See* Fed. R. Civ. P. 72(b)(3). The Court agrees with Defendants' position and finds that Plaintiff's complaint fails to state a claim for racially disparate treatment.

"Disparate-treatment claims involve intentionally discriminatory employment practices." *Tartt v. Wilson Cnty.*, 592 F. App'x 441, 444 (6th Cir. 2014) (citing *Serrano v. Cintas Corp.*, 699 F.3d 884, 892 (6th Cir. 2012)). To establish a prima facie case of race discrimination under Title VII, a plaintiff must show "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)); *see also Peeples v. City of Detroit*, 891 F.3d 622, 634 (6th Cir. 2018).

The R&R discusses only the adverse action prong of the prima facie case, stating that because Plaintiff alleged "one of the . . . factors for proving a constructive discharge," the disparate treatment claim should survive the motion to dismiss. (ECF No. 18 at PageID 626.) But courts applying Title VII pleading standards have required plaintiffs to allege facts satisfying the fourth prong of the prima facie case. *See Boxill v. O'Grady*, 935 F.3d 510, 520 n.6 (6th Cir. 2019); *see also Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1101 (S.D. Ohio 2021); *Bender v. Gen. Dynamics Land Sys.*, No. 2:19-cv-13177, 2020 WL 4366049, at *6 (E.D. Mich. July 30, 2020). Plaintiff here includes no allegations about the fourth prong of this analysis. He fails to allege anything about his replacement or comparators Defendants treated more favorably.

Given Plaintiff's allegations here, the Court questions the decision to construe the complaint as asserting a disparate treatment claim.[8] But even if Plaintiff intended to assert that claim, he did not plead an adverse employment action adequately. "Constructive discharge occurs where the discrimination suffered by an employee was so intolerable that a reasonable person would feel compelled to resign and the employee actually did so." *Townsend v. Rockwell Automation, Inc.*, 852 F. App'x 1011, 1016–17 (6th Cir. 2021) (citing *Green v. Brennan*, 136 S. Ct. 1769, 1776–77 (2016)). "For a constructive discharge claim, a plaintiff must show that (1) 'the employer deliberately created intolerable working conditions, as perceived by a reasonable person,' and (2) 'the employer did so with the intention of forcing the employee to quit.'" *Funk v. City of Lansing*, 821 F. App'x 574, 580 (6th Cir. 2020) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 727–28 (6th Cir. 2014)).

"When determining whether a constructive discharge occurred, courts consider the same types of circumstances as for a hostile-work-environment claim." *Townsend*, 852 F. App'x at 1017 (citing *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003)). Courts also consider "whether an employee is subjected to: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment

---

[8] The lone allegation of purportedly discriminatory conduct is the Jet's Pizza manager calling Plaintiff a crackhead and comparing him to a fictitious depiction of a drug addict. (ECF No. 9 at PageID 474–75.) Plaintiff asserts that this subjected him to "public humiliation" and "discrimination," and caused "damage to [his] reputation." (*Id.* at PageID 475.) And Plaintiff asserts that it "created a hostile . . . work environment for the plaintiff." (*Id.* at PageID 479.) Plaintiff resigned the same day as the manager's statements. (*Id.* at PageID 493.) Based on these allegations, "it is obvious that the allegations focus on the elements of a hostile work environment claim, not a disparate treatment claim." *Ruiz-Fane v. Tharp*, 545 F. Supp. 3d 543, 552 (S.D. Ohio 2021). And Plaintiff's phrasing also supports this Court's conclusion. *See id.* ("Plaintiff describes defendants' purported harassment, using phrases like 'hostile,' 'severe or pervasive,' and 'unwelcomed harassment' in the allegations supporting [his claim]. These are phrases used to establish a claim of hostile work environment, not disparate treatment.").

13

to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Id.* (citing *Logan*, 259 F.3d at 569).

The Sixth Circuit has recognized that "constructive discharge can take on two different forms." *Laster*, 746 F.3d at 728. The first occurs when an employee resigns because of discriminatory harassment. *Id.* And for such claims, the plaintiff must "demonstrate a discriminatory work environment even more egregious than the high standard for hostile work environment." *Id.* (internal quotation marks omitted). As for the second form, "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *Id.* (emphasis and internal quotation marks omitted).

Plaintiff here alleges that he resigned because of discriminatory harassment. (ECF No. 9 at PageID 479, 493.) And because Plaintiff asserts the first form of constructive discharge, he must allege conduct "even more egregious than the high standard for hostile work environment." *See Laster*, 746 F.3d at 728; *see also Cooper*, 742 F. Supp. 2d at 957. Indeed, "[t]he bar for proving constructive discharge is higher than that for a hostile work environment claim, as '[c]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case.'" *Cooper*, 742 F. Supp. 2d at 957 (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 149 (2004)). As stated above, the complaint fails to state a claim for hostile work environment. And Plaintiff's constructive discharge claim "is predicated on the same facts as his hostile work environment claim." *Id.* Consequently, "the constructive discharge claim likewise fails." *Id.* ("Because the Court has already held that Cooper has not

14

alleged facts sufficient to prove that he suffered a hostile work environment, it is not necessary to analyze his hostile work environment constructive discharge claim."); *see also Plautz v. Potter*, 156 F. App'x 812, 819 (6th Cir. 2005) ("We have already decided that the complained of actions do not rise to the level of creating a hostile work environment, and therefore they necessarily do not rise to the level of compelling a reasonable person to resign.").

This Court's analysis differs from the conclusion on this point in the R&R. Although the R&R found that Plaintiff adequately pleaded "badgering, harassment, or humiliation by [his] employer," which "encourage[d] the employee's resignation," it failed to specify which allegations satisfy this requirement. (ECF No. 18 at PageID 626 (quoting *Jodry v. Fire Door Solutions, LLC*, No. 3:20-cv-00243, 2020 WL 7769924, at *6 (M.D. Tenn. Dec. 30, 2020)).) The R&R then concludes that Plaintiff adequately pleaded constructive discharge. (*Id.*) What is more, the R&R overlooks the fact that Plaintiff has not alleged that Theobald acted intending to force Plaintiff to quit. *See Townsend*, 852 F. App'x at 1017; *Jodry*, 2020 WL 7769924, at *6. The Court finds the R&R's analysis unconvincing. This Court reaches the opposite conclusion on this point.

As stated above, this Court agrees with the R&R's conclusion that Plaintiff failed to adequately pleaded a hostile work environment. And courts have found that "[o]ne or two comments . . . do not result in a work environment that is so intolerable that it would force any reasonable employee to resign." *Kaminski v. Hillman Grp., Inc.*, No. 1:19-cv-1010, 2021 WL 680110, at *3 (S.D. Ohio Feb. 22, 2021) (quoting *Carlisle*, 2017 WL 2274995, at *3). Similarly, "[t]he fact that Plaintiff subjectively felt that he could not continue his employment under these conditions is irrelevant since it is well-settled that a 'plaintiff's conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination.'"

*Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992); citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 479 (6th Cir. 2002) ("hurt feelings are not enough to create a case of constructive discharge")). And even if Theobald's comments qualify as "badgering, harassing, or humiliating," they do not meet the standard for hostile work environment, let alone constructive discharge. *See Littlejohn v. Montgomery Cnty. Treasurer*, No. 3:16-cv-00350, 2017 WL 2861183, at *3 (S.D. Ohio July 5, 2017). And Plaintiff has not alleged that those comments were "calculated to encourage [Plaintiff's] resignation." *See Townsend*, 852 F. App'x at 1017; *see also Littlejohn*, 2017 WL 2861183, at *3.

What is more, the R&R cites *Jodry* for the proposition that a plaintiff can adequately plead constructive discharge by alleging only one of the seven relevant factors. (ECF No. 18 at PageID 626 (quoting *Jodry*, 2020 WL 7769924, at *6).) But this is incomplete. The court in *Jodry* found that the plaintiff "alleged *many of the factors* the Sixth Circuit set out in *Logan*: 1) she was demoted, 2) she suffered a 32% cut in pay, 3) she was (unexpectedly) directed to report to a less-qualified male supervisor; and 4) many of her duties were reassigned and her workload reduced." *Jodry*, 2020 WL 7769924, at *7 (emphasis added). As Defendants correctly point out, courts have found that allegations meeting only the "badgering, harassment, or humiliation" factor fail to state a claim for constructive discharge. *See Littlejohn*, 2017 WL 2861183, at *3 ("Even assuming arguendo that her employer did badger, harass, or humiliate her in order to produce a resignation, the manner in which Plaintiff describes circumstances to meet only one out of seven factors does not adequately demonstrate that a reasonable person would believe that her employer created intolerable working conditions.").

Finding that Defendants' objection has merit, the Court **REJECTS** the R&R's analysis and conclusion related to Plaintiff's disparate treatment claim. Because Plaintiff failed to plead

16

constructive discharge adequately, the Court **GRANTS** Defendants' motion to dismiss as it relates to Plaintiff's Title VII claims for race discrimination.

C.  § 1981 Claim

Lastly, the R&R recommends dismissing Plaintiff's § 1981 claim for race discrimination. This Court agrees with this result but not the analysis of this claim. Indeed, the R&R's analysis of Plaintiff's § 1981 claim is brief. After quoting the statute, the R&R concludes that Plaintiff "does not allege violations of any . . . rights" protected by § 1981. (ECF No. 18 at PageID 626–27.) But this claim requires more thorough analysis.

For example, "[s]ection 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for both race-based employment discrimination and retaliation." *Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 521 (6th Cir. 2015) (citing 42 U.S.C. § 1981; *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001)). And courts analyze § 1981 claims in the employment context "under the framework developed for claims brought under Title VII." *Id.* (citing *Noble v. Brinker Int'l Inc.*, 391 F.3d 715, 720 (6th Cir. 2004)); *see also Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018); *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 627 (6th Cir. 2013); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001).

As explained above, the R&R recommends allowing Plaintiff's Title VII claim for race discrimination to survive the motion to dismiss, a conclusion which this Court rejected when reviewing that claim de novo in the section above. And when addressing Plaintiff's § 1981, the R&R concludes without providing any analysis that Plaintiff alleges no "violations of any . . . rights" protected by § 1981. (ECF No. 18 at PageID 626–27.) But if a complaint states a claim for race-based employment discrimination under Title VII, it follows that that same complaint

17

also implicates rights protected by § 1981.  *See Crane*, 634 F. App'x at 521; *see also Christian*, 252 F.3d at 867–68.  And so the R&R reaches contradictory conclusions on Plaintiff's claims for race-based employment discrimination under Title VII and § 1981.  That said, because the same standard applies to both claims, and because this Court has concluded that Plaintiff fails to state a claim under Title VII for race discrimination, the Court likewise finds that Plaintiff fails to state a § 1981 claim.  The Court therefore **MODIFIES** the R&R to include this analysis and **GRANTS** Defendants' motion to dismiss Plaintiff's § 1981 claim.

## CONCLUSION

Based on the above, the Court **ADOPTS IN PART** and **REJECTS IN PART** the R&R.  And the Court therefore **GRANTS** Defendants' motion to dismiss.

**SO ORDERED**, this 29th day of March, 2022.

        s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE